USEC INC. and United States Enrichment Corporation, Plaintiffs–Appellants,

and

Ad Hoc Committee of Domestic Uranium Producers, Plaintiff,

v.

UNITED STATES, Defendant–Appellee.

and

The Government of the Republic of Kazakhstan and National Atomic Company Kazatomprom, Defendants–Appellees,

and

Nukem, Inc., Defendant–Appellee.

USEC Inc. and United States Enrichment Corporation, Plaintiffs–Appellants,

v.

United States, Defendant–Appellee.

and

The Government of the Republic of Kazakhstan and National Atomic Company Kazatomprom, Defendants–Appellees,

and

Nukem, Inc., Defendant–Appellee.

Nos. 01–1421, 01–1552.

United States Court of Appeals, Federal Circuit.

April 25, 2002.

Before MICHEL, CLEVENGER, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

In appeal No. 01–1421, USEC Inc. and United States Enrichment Corporation (collectively, "USEC") appeal from a decision of the Court of International Trade upholding a final determination of the International Trade Commission ("ITC") regarding the importation of uranium from Kazakhstan into the United States. In appeal No. 01–1552, USEC appeals from a separate decision of the Court of International Trade upholding a final determination of the Department of Commerce ("Commerce") concerning related subject matter. Because USEC has not demonstrated that either the ITC or Commerce erred in rendering their final determinations, we *affirm* the judgment of the Court of International Trade in both appeals.

I

In November 1991, in response to a petition seeking the imposition of antidumping duties against imports of uranium from the Soviet Union, the ITC initiated an investigation to determine whether a domestic industry was materially injured or threatened with material injury because of such imports. The Department of Commerce initiated a related investigation to determine whether imports of Soviet uranium were sold or likely to be sold in the United States at less than fair value.

After the Soviet Union dissolved, Commerce signed an agreement with the government of Kazakhstan in October 1992, under which Commerce agreed to suspend its antidumping investigation of uranium from Kazakhstan. *Antidumping; Uranium from Kazakhstan, Kyrgyzstan, Russia, Tajikistan, Ukraine, and Uzbekistan; Suspension of Investigations and Amendment of Preliminary Determinations*, 57 Fed.Reg. 49,222 (Dep't Commerce Oct. 30, 1992) ("Kazakh Suspension Agreement"). Based on the adoption of the Kazakh Suspension Agreement, the ITC suspended its material injury investigation.

The Kazakh Suspension Agreement expressly noted that "[f]or purposes of this Agreement, uranium enriched in $U^{235}$ in another country prior to direct and/or indirect importation into the United States is not considered uranium from Kazakhstan and is not subject to the terms of this Agreement." 57 Fed.Reg. at 49,222. Commerce and the government of Kazakhstan later amended the Kazakh Suspension Agreement to include uranium ore from Kazakhstan that was enriched in another country. *Agreement Suspending the Antidumping Investigation on Uranium From Kazakhstan*, 60 Fed.Reg. 25,692, 25,693 (Dep't Commerce May 12, 1995).

After the government of Kazakhstan terminated the Kazakh Suspension Agreement in 1999, Commerce and the ITC resumed their investigations of uranium from Kazakhstan. During Commerce's resumed investigation, the "Uranium Coalition," which included USEC, filed a request for scope clarification. That request asked Commerce to clarify the scope of the investigation to include Kazakhstan-origin natural uranium that had been enriched in third countries. In its final determination, Commerce found that "imports of uranium from Kazakhstan are being sold, or are

likely to be sold, in the United States at less than fair value." *Final Determination of Sales at Less Than Fair Value: Uranium from the Republic of Kazakhstan,* 64 Fed.Reg. 31,179, 31,179 (Dep't Commerce June 10, 1999) (*"Final LTFV Determination"*). In response to the scope clarification request, however, Commerce determined that it need not decide whether the scope of the antidumping investigation should be expanded to include uranium from Kazakhstan that was enriched in a third country. *Id.* at 31,185. A month later, on July 23, 1999, the ITC issued a negative final material injury and threat of material injury determination. *Uranium from Kazakhstan,* USITC Pub. 3213, Inv. No. 731–TA–539–A (Final) (July 1999).

USEC challenged both Commerce's and the ITC's final determinations before the Court of International Trade. USEC argued that Commerce had erred by declining to rule on the Uranium Coalition's scope clarification request and that the ITC had erred by excluding from its material injury analysis the effect of potential imports from the so-called "Kazakh Stockpile." The Kazakh Stockpile is an inventory of uranium that was present in Kazakhstan when the Soviet Union dissolved in 1991, but had previously been enriched in Soviet facilities located in territory now controlled by Russia. According to USEC, the ITC's exclusion of the Kazakh Stockpile affected the ITC's analysis of the issues of material injury and threat of material injury. In separate opinions, the Court of International Trade upheld both of the challenged determinations. *USEC, Inc. v. United States,* 132 F.Supp.2d 1 (Ct. Int'l Trade 2001); *USEC, Inc. v. United States,* 23 I.T.R.D. (BNA) 1503 (Ct. Int'l Trade 2001).

## II

■ Although these two cases were separately presented to the Court of International Trade and separately briefed and argued in this court, we have consolidated them for purposes of decision because both appeals relate to the same antidumping proceeding. We review both final determinations by applying anew the statutory standard that the Court of International Trade applied in reviewing the administrative record. *Goss Graphics Sys., Inc. v. United States,* 216 F.3d 1357, 1361 (Fed. Cir.2000). Accordingly, we will uphold the respective agencies' determinations unless they are unsupported by substantial evidence on the record or are otherwise not in accordance with law. *Id.;* 19 U.S.C. § 1516a(b)(1)(B)(i). In conducting our review, however, we give due respect to the informed opinion of the Court of International Trade. *Magnesium Corp. of Am. v. United States,* 166 F.3d 1364, 1368 (Fed. Cir.1999).

## III

In appeal No. 01–1552, USEC renews its challenge to Commerce's refusal to clarify the scope of the antidumping investigation. USEC contends that Commerce improperly relied on the lateness of the Uranium Coalition's request for clarification as the basis for its refusal to act on the request. USEC notes that the Uranium Coalition's scope clarification request was filed a week prior to verification and therefore satisfied the timeliness requirement of 19 C.F.R. § 353.31(a)(1)(i) (1997). Because the regulatory timeliness requirement was satisfied, USEC argues, it was improper for Commerce to rely on the lateness of the submission to justify its refusal to rule on the request, citing *AL Tech Specialty Steel Corp. v. United States,* 947 F.Supp. 510, 519 (Ct. Int'l Trade 1996) ("Commerce cannot apply [19 C.F.R. § 353.31(a)(1)(i) ] time limits arbitrarily or capriciously by

refusing to accept information that is submitted before the applicable deadline.").

We reject USEC's argument. An examination of Commerce's final determination shows that Commerce declined to resolve the scope issue because it was unnecessary to the final determination, not solely because the request was filed late in the investigation. Commerce stated that "there is no evidence on the record to indicate that there were any entries into the United States during the POI [period of investigation] of Kazakhstan uranium enriched in a third country." *Final LTFV Determination*, 64 Fed.Reg. at 31,185. In fact, Commerce added, the Uranium Coalition had acknowledged that "the practice about which they are concerned evolved after the POI." *Id.* Because the scope clarification request was "unrelated to the calculation of a dumping margin on uranium from Kazakhstan during the POI," Commerce concluded that "the Department need not decide in this final determination whether uranium from Kazakhstan enriched in a third country was sold at less than fair value during the POI." *Id.* Instead, Commerce stated that "the Department will initiate a scope inquiry on Kazakhstan uranium enriched in a third country simultaneously with the issuance of any antidumping order in this proceeding." *Id.*

Although Commerce observed that the timing of the filing did not permit adequate time to "properly evaluate the law, arguments, and facts surrounding this issue," *id.*, we agree with the Court of International Trade that the timing of the scope request was not the determinative factor

in Commerce's decision to refrain from rendering a scope clarification in this case. For that reason, we uphold the trial court's rejection of USEC's argument that Commerce used an improper reason in declining to address the scope clarification request.

■ USEC next argues that 19 U.S.C. § 1673d(a)(1) required Commerce to decide the Uranium Coalition's scope clarification request. That statute mandates that Commerce make a final determination as to "whether the subject merchandise is being, or is likely to be, sold in the United States at less than its fair value." According to USEC, even though Kazakh uranium enriched in third countries was not imported into the United States during the period of investigation, such uranium was imported in years following the period of investigation; therefore, USEC argues, as of the time of the period of investigation it was "likely to be" sold in the United States at less than fair value and should have been included within the scope of the investigation.*

We disagree. The period of investigation at issue in this case was June through November 1991. During that period, there were no U.S. sales of Kazakh-origin uranium that had been enriched in third countries, and the parties point to no evidence in the record that such sales were imminent. The fact that uranium enriched in third countries was sold in the United States years after the end of the period of investigation is not sufficient to establish that, as of the period of investigation, such products were sold or likely to be sold in the United States at less than fair value. Accordingly, Commerce acted lawfully in

---

* USEC never fully explains what it understands the term "likely to be sold" to entail, but it seems to argue that because uranium enriched in third countries was imported after the period of investigation, sales of that merchandise must have been "likely" as of the period of investigation. That form of *post hoc ergo propter hoc* reasoning ("I won the lottery, and therefore I was likely to win when I bought my ticket") is obviously fallacious.

declining to consider the scope clarification request on the ground that the goods covered by that request were not relevant to its investigation.

USEC also contends that Commerce's refusal to decide the scope clarification request contravened Congress's intent, expressed in 19 U.S.C. § 1673d(a)(1), that final determinations be "final." Like the Court of International Trade, we find that USEC has failed to show that Commerce violated any congressional policy of "finality." As discussed above, Commerce fulfilled its statutory mandate by rendering a final determination with respect to the subject merchandise of its investigation. Because there were no entries of Kazakh uranium enriched in third countries during the period of investigation, Commerce determined that there was no need to address whether such imports should be either included in or excluded from its investigation. That disposition does not render the final determination nonfinal. Instead, it simply contemplates the possibility that Commerce could later address the scope question in a separate inquiry if necessary to prevent the circumvention of any antidumping order that might issue from the current proceedings. *See* 19 U.S.C. § 1677j.

In sum, we uphold the decision of the Court of International Trade sustaining Commerce's decision not to resolve the scope clarification issue in its final determination.

### IV

■ In appeal No. 01–1421, USEC contends that the ITC erred by failing to take into account potential imports from the "Kazakh Stockpile" in making its material injury determination. Under 19 U.S.C. § 1673d(b)(1), the ITC must determine whether a domestic industry is materially injured or threatened with material injury

"by reason of imports, or sales (or the likelihood of sales) for importation, of the merchandise with respect to which the administering authority [in this case the Department of Commerce] has made an affirmative determination under subsection (a)(1) of this section." The merchandise that is subject to the ITC's analysis is the "subject merchandise" as to which Commerce has initiated an antidumping investigation. 19 U.S.C. § 1673d(a)(1). Thus, while the ITC determines whether there is material injury or the threat of material injury, it is Commerce's investigation that defines the scope of the ITC's analysis. The ITC may not modify the class or kind of imported merchandise examined by Commerce. *Cambridge Lee Indus., Inc. v. United States*, 728 F.Supp. 748, 750 (Ct. Int'l Trade 1989).

In choosing to exclude potential imports of uranium from the Kazakh Stockpile in conducting its material injury analysis, the ITC relied on the statement in Commerce's final determination that "[t]he Department continues to regard enrichment of uranium as conferring origin." *Final LTFV Determination*, 64 Fed.Reg. at 31, 1181. In accordance with that pronouncement, the ITC excluded the Kazakh Stockpile because that uranium was enriched in Soviet facilities located in territory that is now controlled by Russia and therefore was not of Kazakh origin for purposes of its determination.

USEC argues that the ITC overstepped its statutory authority by excluding the Kazakh Stockpile from its material injury determination. According to USEC, the ITC improperly modified the scope of investigation defined by Commerce and effectively rendered its own scope determination regarding the Kazakh Stockpile. In the alternative, USEC argues that in the absence of definitive guidance from Commerce, the ITC should have included the

Kazakh Stockpile within the scope of its investigation.

We find USEC's arguments on this point unpersuasive. As discussed above, Commerce unambiguously set forth in its *Final LTFV Determination* the principle that enrichment confers origin. The ITC did not err in relying on that clear statement of principle to conclude that the Kazakh Stockpile, which was enriched outside of the territory of Kazakhstan, was excluded from the scope of its analysis.

USEC also argues that the ITC ignored evidence that Commerce had approved several shipments from the Kazakh Stockpile for re-export during 1996–98 under the Kazakh Suspension Agreement. Given the similarities between the scope of the Suspension Agreement and that of Commerce's *Final LTFV Determination,* USEC contends that Commerce's practice of approving those transactions demonstrates that the Kazakh Stockpile is merchandise subject to its antidumping investigation.

The mere fact that the ITC did not expressly address the 1996–98 transactions does not establish that they were not considered. The ITC is not required to explicitly address every piece of evidence presented by the parties, and absent a showing to the contrary, the ITC is presumed to have considered all of the evidence on the record. *See Granges Metallverken AB v. United States,* 716 F.Supp. 17, 24 (Ct. Int'l Trade 1989). In its opinion, the ITC stated that it had considered the parties' arguments on the issue of the origin of the Kazakh Stockpile, and we have no reason to believe that the ITC did not fully consider the record evidence regarding those transactions.

In any event, we fail to see how Commerce's approvals of the 1996–98 transactions show that the ITC's determination is in error. Although the scope of the Ka-

zakh Suspension Agreement and the scope of Commerce's *Final LTFV Determination* are worded in similar terms, it does not necessarily follow that imports covered by the former necessarily fall within the scope of the latter. The Suspension Agreement and Commerce's final determination were promulgated under different statutory provisions with distinct purposes. *Compare* 19 U.S.C. § 1673c(c)(1) *with* 19 U.S.C. § 1673d(a)(1). We fail to see how Commerce's treatment of the Kazakh Stockpile under the Suspension Agreement could contradict the plain language of the scope of the investigation set forth in Commerce's final determination in this separate, antidumping proceeding.

Finally, USEC directs us to a file memorandum summarizing a telephone conversation between an ITC employee and a Commerce employee concerning the origin of the Kazkah Stockpile. According to USEC, that memorandum indicates that Commerce had not directly addressed the scope definition issue, leaving it "to some extent" an open question. We conclude that the Commerce employee's informal comments are insufficient to create ambiguity in the principle clearly set forth by Commerce in its published, final determination that enrichment confers origin. The ITC appropriately found that there is no ambiguity that would justify a departure from that plain meaning of Commerce's scope definition. We therefore affirm the holding of the Court of International Trade that the ITC did not err in excluding the Kazakh Stockpile from its material injury analysis.